# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs April 12, 2011

## STATE OF TENNESSEE v. FREDERICK HOBSON

**Appeal from the Criminal Court for Shelby County**
**Nos. 09-01898, -01899, -01900     Paula L. Skahan, Judge**

---

**No. W2010-01766-CCA-R3-CD - Filed September 21, 2011**

---

The Defendant, Frederick Hobson, was convicted by a Shelby County Criminal Court jury of three counts of selling cocaine, three counts of possessing cocaine with the intent to sell, and three counts of possessing cocaine with the intent to deliver, Class C felonies. See T.C.A. § 39-17-417(a) (2010). The trial court merged the convictions for possession with the intent to sell and possession with the intent to deliver and sentenced the Defendant as a Range II, multiple offender to ten years' confinement for two of the sale convictions and two of the possession convictions and to six years' confinement for the remaining sale and possession convictions. The ten-year sentences were ordered to be served consecutively to the six-year sentences, for an effective sixteen-year sentence. On appeal, the Defendant contends that the evidence was insufficient to support his convictions and that the trial court erred by imposing the maximum sentence for four convictions and by imposing partially consecutive sentences. We affirm the convictions, but we vacate the judgments and remand the case for entry of judgments reflecting merger of the jury verdicts into three convictions for sale of a controlled substance.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Vacated;**
**Case Remanded**

JOSEPH M. TIPTON, P.J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and ROBERT W. WEDEMEYER, JJ., joined.

Stephen Bush, District Public Defender; Harry E. Sayle, III, Assistant District Public Defender (on appeal); and Jennifer Johnson, Assistant District Public Defender (at trial), for the appellant, Frederick Hobson.

Robert E. Cooper, Jr., Attorney General and Reporter; Nicholas W. Spangler, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Doug Carriker and Corlis Shaw, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

This case relates to three transactions during which crack cocaine was sold to an undercover police officer. At the trial, Memphis Police Officer April Leatherwood testified that she worked with the undercover operations unit and that she was an undercover agent in January 2009. She said that on January 6, 2009, she bought crack cocaine from a person at a convenience store and that the Defendant stood nearby while she bought the cocaine. She said that after the sale was complete, the Defendant approached her, gave her a piece of paper with the name "Fred" and a telephone number on it, and told her to call him. She called the Defendant the next day and arranged to meet him at the convenience store. When she arrived at the store, the Defendant got into her car and they spoke for a few minutes. She informed the Defendant that she was looking for crack cocaine. She said that she had a clear view of the Defendant's face and that he was tall and had a raised area of skin on the left side of his neck that resembled a scar. She said that she gave the Defendant twenty dollars, that he left her car and walked across the street, and that he handed her crack cocaine when he returned.

Officer Leatherwood testified that on January 12, 2009, she called the Defendant and arranged to meet him at a Kentucky Fried Chicken restaurant on the corner of Jackson Avenue and Hollywood Street. She said that when the Defendant arrived, she got into the front passenger's side of his car and handed him twenty dollars. She said that the Defendant left the car and that he handed her crack cocaine when he returned. A second undercover officer, Taft Bradley, accompanied Officer Leatherwood to the restaurant, but he remained in her car while she bought the cocaine.

Officer Leatherwood testified that on January 16, 2009, she called the Defendant and arranged to meet him at the convenience store where they originally met. Officer Bradley accompanied her to the store. She said that when the Defendant arrived, he got into the back seat of her car, she gave the Defendant twenty dollars, and drove him to a home on Carpenter Street near the convenience store. She said that the Defendant went into the home and that he handed her crack cocaine when he returned.

Officer Leatherwood testified that she bought the crack cocaine from the Defendant on all three occasions, and she identified the Defendant in court. She said that after the second buy, she researched the license plate number of the Honda Accord the Defendant drove to the restaurant. She searched for persons associated with the name and address registered to the car and came upon the Defendant's name and a description of his physical attributes. She said she researched the Defendant's name further because she bought the cocaine from a man named Fred. She said that she found a photograph of the Defendant and that the photograph depicted the person from whom she bought the cocaine. She gave the

information she found to a detective and the detective created a lineup using photographs of six different men. She said she identified the Defendant from the lineup as the same person who sold her crack cocaine. She identified the lineup she was shown and said the photograph of the Defendant depicted the identifying marks on his neck. The trial court instructed the Defendant, at the State's request, to show his neck to the jury, and he did so. Officer Leatherwood agreed she was certain that she bought the cocaine from the Defendant.

Officer Leatherwood testified that each time she bought cocaine from the Defendant, she placed the cocaine in a plastic bag, placed the plastic bag in an evidence envelope, and made notes of the purchase on the envelope. She said her notes included a number indicating how many purchases she made that day. She identified the evidence envelopes she used and said the information she wrote on the envelopes indicated that she purchased the contents from the Defendant.

Officer Leatherwood testified that she made audio and video recordings of the undercover purchases with the Defendant. She identified a disc containing recordings of the three purchases, and the recordings were played for the jury. She said the recording of the first purchase did not show the Defendant. She did not wear the recording equipment during the second purchase when she entered the Defendant's car but said Officer Bradley recorded the purchase from inside her car.

On cross-examination, Officer Leatherwood testified that she went to the convenience store on January 7, 2009, intending to buy crack cocaine from the man who identified himself as Fred the previous day. She agreed that the recordings of the first and second purchases did not show the Defendant. She said nothing was seen on the second recording because the camera fell from its intended position, and she agreed that Officer Bradley wore the camera during the second purchase. She said that although the recording included Officer Bradley's stating the license plate number of the car the Defendant drove, she also independently remembered the license plate number because it was the first time the Defendant drove a car to meet her. She said the third recording showed the Defendant walk in front of her car after he handed her the cocaine.

Officer Leatherwood agreed that she worked as an undercover agent for one year. She bought drugs each day while working and completed over 1000 drug purchases from various people in different parts of Memphis. She said she remembered her interactions with the Defendant because they occurred during her first month of being an undercover agent and he was the second or third person she ever purchased drugs from. She agreed that she encountered numerous people on the streets but said the Defendant was the only person she encountered who had a scar on his neck. She said that on January 21, 2009, she identified

the Defendant in a photograph lineup as the person from whom she purchased the cocaine and circled his photograph.

Officer Leatherwood testified that she did not remember how many drug purchases she made on January 7, 2009, but that the purchase from the Defendant was the third purchase she made that day. She said her purchase from the Defendant was the third she made on January 12 and the sixth made on January 16. She said that she had never misidentified a suspect but acknowledged that she did not remain informed about her cases after they were transferred to other officers.

On redirect examination, Officer Leatherwood testified that although the video recordings did not show the Defendant, they assisted her recollection of the drug purchases. She said that she also had independent recollection of her interactions with the Defendant because he was the first person she ever arrested and that she was certain she purchased the cocaine from the Defendant.

Memphis Police Officer Taft Bradley testified that he worked as an undercover officer in January 2009. He said he accompanied Officer Leatherwood twice when she purchased drugs from a man named Fred, the first occurring at a Kentucky Fried Chicken restaurant and the second occurring near a purple house on Carpenter Street. He said that at the restaurant, Officer Leatherwood got out of her car, spoke briefly with the seller, and was handed drugs. He said that although he was not able to see the seller clearly during the first transaction, he saw the Defendant and the scar on his neck clearly during the second transaction when the Defendant sat in Officer Leatherwood's car. He said that during both transactions, he saw Officer Leatherwood hand the Defendant money in exchange for crack cocaine.

On cross-examination, Officer Bradley testified that he worked as an undercover agent for two years and that he purchased drugs between five and ten times a day from different persons. He agreed that the Defendant sat in the back seat of Officer Leatherwood's car during the transaction on Carpenter Street, that he sat in the front seat with Officer Leatherwood, and that he saw a scar on the Defendant's neck.

On redirect examination, Officer Bradley testified that Officer Leatherwood was the lead officer during the transactions with the Defendant and that he was only present to assist her investigation and to help train her in undercover work. He agreed that Officer Leatherwood told him the Defendant had a scar on his neck and that he looked for and saw the scar during the transaction on Carpenter Street.

Memphis Police Officer Anthony Godwin testified that he was the evidence custodian for the undercover operations unit and that he handled and processed all of the evidence submitted by undercover officers. He identified the drugs purchased in this case and said his name, Officer Leatherwood's case number, and the date of the purchases were written on the evidence envelopes. He said that the contents of the envelopes tested positive for cocaine during his preliminary analysis and that he sent the substances to the Tennessee Bureau of Investigation (TBI) for further analysis.

On cross-examination, Officer Godwin testified that undercover officers placed their purchases in a lockbox at the police department. He said that he was the only person with access to the lockbox, other than a secondary evidence custodian who processed evidence in his absence. He said that the undercover officers wrote all of the information on the evidence envelopes except for the weight of the contents and that each of the envelopes stated where the contents were purchased. He admitted he did not watch the officers place drugs in the envelopes.

Memphis Police Detective Jonathan Clapp testified that he worked with the undercover operations unit and that he was the only officer who created photograph lineups. He said he obtained the photographs to be used in lineups from a program developed by the sheriff's department. He said that if he entered a suspect's name and date of birth into the program, it displayed all of the suspects's mugshots. He said that the program also displayed photographs of other persons having physical attributes similar to the suspect and that he created lineups using the similar photographs. He identified the lineup he created for this case and said Officer Leatherwood circled a photograph and wrote her identification number below it.

On cross-examination, Detective Clapp testified that Officer Leatherwood made the identification on January 21, 2009. He did not know when the drug purchases were made. He said that when he created a lineup, the undercover officer or an identification team provided the identity of the suspect.

Memphis Police Officer Louis Brown testified that he worked with the organized crime unit and that his duties included taking drugs to the TBI for analysis. He identified the plastic bags and manila envelopes he transported to the TBI laboratory for this case and said he wrote the Defendant's name, the report number, and "white rock substance" on the plastic bags. He said that after the TBI analyzed the evidence, he returned it to the sheriff's department.

On cross-examination, Officer Brown agreed that his writing on the evidence bag

described the substance inside. He said that his description was based on the information provided by the undercover officer and that he did not open the evidence envelope.

TBI Agent Melanie Johnson, an expert in drug identification, testified that she worked with the forensic chemistry unit. She identified the evidence submitted to her by Officer Brown on January 4, 2010. She identified the reports she created after completing her analysis of the evidence and said each of the samples tested positive for cocaine. She said the samples weighed 0.1 grams, 0.06 grams, and 0.1 grams.

On cross-examination, Agent Johnson testified that she performed her analysis by testing a small amount of the evidence submitted. She said she did not alter the packaging of the evidence she received in this case, other than to write her laboratory number and her initials on the packaging and sealing it with tape when she finished her analysis.

On redirect examination, Agent Johnson testified that she took two small samples of the cocaine for testing. She did not know whether samples were previously taken for testing.

Upon this evidence, the jury found the Defendant guilty of three counts of selling cocaine, three counts of possessing cocaine with the intent to sell, and three counts of possessing cocaine with the intent to deliver. The trial court sentenced the Defendant as a Range II, multiple offender to an effective sixteen-year sentence. This appeal followed.

**I**

The Defendant contends that the evidence was insufficient to support his convictions because it did not establish that he was the man who sold crack cocaine to Officer Leatherwood. The State argues that the evidence was sufficient to support the Defendant's convictions. We agree with the State.

Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). This means that we may not reweigh the evidence but must presume that the trier of fact has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Any questions about the credibility of the witnesses were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

As pertinent to this appeal, it is a criminal offense for a defendant to sell a controlled substance knowingly or to possess a controlled substance knowingly with the intent to sell or deliver it. T.C.A. § 39-17-417(a). "[A] person acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." T.C.A. § 39-11-106(a)(20) (2006) (amended 2009). "A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result." Id.

Taken in the light most favorable to the State, Officer Leatherwood testified that in January 2009, she contacted the Defendant after he watched her purchase drugs from another person, approached her, and told her to call him. She said she met with the Defendant three times and gave him twenty dollars in exchange for crack cocaine each time. She said that she had a clear view of the Defendant's face and identifying marks on his neck and that she was certain she purchased the cocaine from the Defendant. She said she remembered her interactions with the Defendant because he was the first person she ever arrested. TBI Agent Melanie Johnson testified that she analyzed the evidence submitted to her by Officer Brown and that each sample tested positive for cocaine.

We conclude that a rational trier of fact could have found beyond a reasonable doubt the elements of sale of a controlled substance, possession of cocaine with the intent to sell, and possession of cocaine with the intent to deliver. We hold that the evidence is sufficient to support the Defendant's convictions.

## II

The Defendant contends that the trial court erred by imposing the maximum sentence for four convictions and by imposing partially consecutive sentences. The Defendant argues that his sentences are excessive because the drug sales involved "minuscule" amounts of cocaine, the trial court failed to consider as a mitigating factor that his conduct neither caused nor threatened serious bodily injury, and the trial court afforded undue weight to enhancement factor (1) in light of the fact that his previous felony convictions occurred almost twenty-years before the instant offenses. He also argues that the evidence did not support the imposition of partially consecutive sentencing. The State contends that the Defendant waived consideration of all sentencing issues by failing to include a copy of the presentence report in the appellate record. Alternatively, the State contends that the trial court properly sentenced the Defendant after considering all relevant sentencing factors and principles. We conclude that the Defendant has failed to provide a sufficient record for us to review the trial court's sentencing determinations and is not entitled to relief.

-7-

Appellate review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. T.C.A. §§ 40-35-401(d), -402(d) (2010). As the Sentencing Commission Comments to these sections note, the burden is now on the appealing party to show that the sentencing is improper. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

However, "'the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances.'" State v. Carter, 254 S.W.3d 335, 344-45 (Tenn. 2008) (quoting State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991)). In this respect, for the purpose of meaningful appellate review, the trial court must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. State v. Jones, 883 S.W.2d 597, 599 (Tenn. 1994); see T.C.A. § 40-35-210(e) (2010).

Also, in conducting a de novo review, we must consider (1) any evidence received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee, (7) any statement that the defendant made on his own behalf, and (8) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-102, -103, -210; see Ashby, 823 S.W.2d at 168; State v. Moss, 727 S.W.2d 229, 236 (Tenn. 1986).

In imposing a sentence within the appropriate range of punishment for the defendant:

> [T]he court shall consider, but is not bound by, the following advisory sentencing guidelines:
>
> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the

-8-

general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

(2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

T.C.A. § 40-35-210. From this, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" Carter, 254 S.W.3d at 343 (quoting T.C.A. § 40-35-210(d)).

Consecutive sentencing is guided by Tennessee Code Annotated section 40-35-115(b), which states in pertinent part that the court may order sentences to run consecutively if it finds by a preponderance of the evidence that a defendant is a professional criminal who has knowingly devoted his life to criminal acts as a major source of livelihood or that a defendant is an offender whose record of criminal activity is extensive. See T.C.A. § 40-35-115(b)(1)-(2) (2010). The decision to impose concurrent or consecutive sentences is a matter left to the discretion of the trial court. State v. Blouvet, 965 S.W.2d 489, 495 (Tenn. Crim. App.1997) (citing State v. James, 688 S.W.2d 463 (Tenn. Crim. App. 1984)).

At the sentencing hearing, the Defendant testified that although he was previously convicted for selling controlled substances, he was not selling the drugs in this case and did not profit from the sales. He said that after Officer Leatherwood approached him and stated that she was looking for crack cocaine and a man named Doc, he informed her that he could find the drugs for her. He said that Doc was a drug dealer but that he did not work for Doc. He said that he obtained drugs for Officer Leatherwood because he was attempting to earn money but again stated that he did not earn money from the sales. He admitted using crack cocaine "off and on" for about three years. He admitted he had a criminal history but said most of his offenses occurred when he was younger. He said that he did not make a living selling drugs and that when he obtained drugs for Officer Leatherwood, he "was getting the dope house busted."

The Defendant testified that he worked "off and on" unloading furniture trucks for Atlas Van Lines and Bluff City. He said that he worked for the company for about twelve

years and that he unloaded trucks whenever he was notified that work was available. He said that his criminal record made it difficult to find full-time employment and that he did not graduate from high school. He said that if he were granted probation, he would earn his "GED" and find full-time employment. He said he would not become involved with drugs again because he was focused on improving his life and helping his four children.

On cross-examination, the Defendant testified that the last time he was employed full-time was when he worked for Mario Mover in 2004 but that he was paid in cash and did not receive paychecks. He said he worked full-time for Bluff City in 2003 until the economy slowed. He said that he was employed full-time for three years, but that at no other time in his life did he have steady employment. He said he was paid cash for most of the jobs he held. He said that he had four children and that he provided for them by using food stamps and performing "a little work on the side" painting houses.

The Defendant denied selling drugs but admitted he sold drugs twenty years earlier. He admitted that he gave Officer Leatherwood crack cocaine twice in exchange for forty dollars and said he should not have been charged with a third sale. He said that the two sales were the only times he was approached by someone looking for drugs and that he was "at the wrong place at the wrong time." He said he found crack cocaine for Officer Leatherwood after she gave him money but denied selling it to her. He admitted having at least four previous felony convictions and being charged with misdemeanor assault, but said he thought the assault charge had been dismissed. He denied being convicted for misdemeanor assault and receiving a six-month sentence.

The trial court found that enhancement factor (1) was applicable because the Defendant had five previous felony convictions and numerous misdemeanor convictions. See T.C.A. § 40-35-114(1) (2010) (the defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range). Although the trial court stated that the Defendant's criminal record was "the only enhancing factor in this case," it found that the Defendant previously violated the terms of his probation. See T.C.A. § 40-35-114(8) (the defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community). In determining that consecutive sentencing was appropriate, the trial court found that the Defendant had an extensive history of criminal convictions and that he was a professional criminal who knowingly devoted his life to criminal acts as a major source of livelihood. See 40-35-115(b) (1)-(2).

The Defendant's failure to include the presentence report in the record leaves this court unable to perform a de novo review of his sentences. The presentence report was mentioned at the sentencing hearing, and the State has noted the report's absence from the record on appeal. The Defendant, however, has not sought to supplement the record. "It is the duty of the appellant to prepare a record which conveys a fair, accurate, and complete account of what trans[pir]ed in the trial court with respect to the issues which form the basis of the appeal." State v. Oody, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991); see T.R.A.P. 24(b). "In the absence of an adequate record on appeal, this court must presume that the trial court's rulings were supported by sufficient evidence." Oody, 823 S.W.2d at 559. Accordingly, we must presume that the evidence supported the sentences imposed by the trial court. The Defendant is not entitled to relief.

As a matter of plain error, we hold that principles of double jeopardy bar the Defendant's multiple convictions for selling cocaine and possessing the same cocaine with intent to deliver and intent to sell. See Tenn. R. App. P. 36(b); State v. Johnson, 765 S.W.2d 780, 782 (Tenn. Crim. App. 1988) (holding that double jeopardy bars convictions for both possession with intent to deliver and possession with intent to sell based upon the same evidence); State v. Williams, 623 S.W.2d 121, 125 (Tenn. Crim. App. 1981) (holding that double jeopardy prohibits convictions for possession with intent to sell and for selling the same controlled substance); State v. Artez L. Moreis, No. W2002-00474-CCA-R3-CD, Shelby County, slip op. at 5 (Tenn. Crim. App. Apr. 2, 2003) (holding that double jeopardy barred three convictions for sale of a controlled substance, possession with intent to deliver, and possession with intent to sell, when all three convictions were based upon a single drug sale involving the same controlled substance), app. denied (Tenn. Dec. 8, 2003). In order to preserve the jury's findings with regard to each count, the trial court should have merged the verdicts into three convictions for sale of a controlled substance. See, e.g., State v. Howard, 30 S.W.3d 271, 274 n.4 (Tenn. 2000) (noting that a court may avoid a double jeopardy violation by merging offenses and imposing a single conviction when the jury finds the defendant guilty of multiple counts of the same crime).

In consideration of the foregoing and the record as a whole, we affirm the Defendant's convictions, but we vacate the judgments and remand the case for entry of three judgments in accordance with this opinion.

_____
JOSEPH M. TIPTON,  PRESIDING JUDGE